ASHLEY CAPITAL, LLC v DEPARTMENT OF TREASURY

Docket No. 322386. Submitted November 3, 2015, at Lansing. Decided November 10, 2015. Approved for publication January 5, 2016, at 9:00 a.m.

Ashley Capital, LLC, filed an action in the Court of Claims regarding Ashley Capital's claim that the Department of Treasury (the Department) improperly calculated the 2008, 2009, and 2011 tax refunds to which Ashley Capital was entitled under the then-effective Michigan Business Tax Act (BTA). The BTA replaced the former Single Business Tax Act (SBTA), and although the BTA itself has since been repealed and replaced by the Corporate Income Tax Act, the BTA applied to this case. Ashley Capital alleged that the Department wrongly applied certain carryforward credits from the SBTA; according to Ashley Capital, the Department failed to follow MCL 208.1403(1), which instructed a party to claim compensation and investment credits available under the BTA before claiming any other tax credits available under the BTA, specifically, carryforward credits and brownfield rehabilitation credits. Despite the language of MCL 208.1403(1), the Department developed a form that instructed a party to claim carryforward credits and brownfield rehabilitation credits before other credits under the BTA, an instruction directly contrary to the statutory language in MCL 208.1403(1). Ashley Capital's refund was reduced when the credits were applied as the Department indicated they should be in the form. Ashley Capital challenged the Department's reduction of Ashley Capital's refund, and the Department's hearing referee conducted an informal conference about the matter, after which the referee recommended that Ashley Capital receive a refund. However, the Department issued a decision and order overruling the referee's recommendation. Ashley Capital appealed the Department's decision in the Court of Claims. The Court of Claims, MICHAEL J. TALBOT, C.J., reversed the Department's decision and granted summary disposition to Ashley Capital. The Department appealed.

The Court of Appeals *held*:

The sequence in which tax credits were to be claimed at the time this case was decided was governed by former MCL 208.1403, which stated that compensation credits and investment credits were to be claimed "before any other credit under th[e BTA]." The Court of Claims properly interpreted the reference in MCL 208.1403(1) to "any other credit under the BTA" as including those credits that originated in the SBTA—brownfield rehabilitation credits and carryforward credits—and were carried over to the BTA. Whether the tax credits appearing in the BTA were created under the SBTA or the BTA is irrelevant. The language in MCL 208.1403 made no distinction between credits established under either of the two acts, and some of the credits from the SBTA also appeared in the BTA. The sequence in which the tax credits were to be applied was expressly stated in MCL 208.1403, and the Department was obligated to follow that sequence when creating a form designed to facilitate the process by which tax refunds were determined. In this case, there was an irreconcilable conflict between the language in the Department's form and the statutory language. Ashley Capital properly followed the instructions contained in the statutory language and claimed compensation credits and investment credits before claiming other tax credits that appeared in the BTA.

Affirmed.

TAXATION — BUSINESS — TAX CREDITS — SEQUENCE OF CLAIMED CREDITS.

Compensation credits and investment credits must be claimed before brownfield rehabilitation credits and carryforward credits; the plain language of MCL 208.1403 instructed a taxpayer to claim compensation and investment credits before claiming any other credits described in the Business Tax Act (BTA); "any other credits under the BTA" was not limited to only those credits that were created by the BTA; although compensation and investment credits first appeared in the Single Business Tax Act (SBTA), they were written into the BTA when the SBTA was repealed; while the Department of Treasury has the authority to issue forms aimed at facilitating the process of filing taxes, it does not have the authority to change the sequence of tax credits as it was established by the Legislature.

*Honigman Miller Schwartz and Cohn LLP* (by *Patrick R. Van Tiflin, Daniel L. Stanley,* and *Brian T. Quinn*) for Ashley Capital, LLC.

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *Matthew Schneider*, Chief Legal Counsel, and *Zachary C. Larsen*, Assistant Attorney General, for the Department of Treasury.

Before: GADOLA, P.J., and HOEKSTRA and M. J. KELLY, JJ.

PER CURIAM. Plaintiff, Ashley Capital, LLC, filed an action in the Court of Claims, asserting that defendant, Department of Treasury (the Department), improperly calculated the tax owed by Ashley Capital under the former Michigan Business Tax Act (BTA), MCL 208.1101 *et seq.*, for the tax years 2008, 2009, and 2011.[1] Ashley Capital specifically contested the sequence in which the Department applied certain carryforward credits from the Single Business Tax Act (SBTA), MCL 208.1 *et seq.*, when calculating its BTA liability.[2] The Department appeals as of right from an opinion and order that denied its motion under MCR 2.116(C)(8) for summary disposition and granted judgment in favor of Ashley Capital under MCR 2.116(I)(2). Because the Court of Claims correctly determined the sequence in which the credits available to Ashley Capital under the BTA should be applied, we affirm.

This case involves the sequence in which credits should be applied against tax liability under the BTA. In particular, there are four types of credits at issue. They are (1) the "unused carryforward credit" de-

---

[1] The BTA was repealed by 2011 PA 39; it was replaced with the Corporate Income Tax Act, MCL 206.601 *et seq.* See *Int'l Business Machines Corp v Dep't of Treasury*, 496 Mich 642, 650, 650 n 23; 852 NW2d 865 (2014) (opinion by VIVIANO, J.).

[2] The SBTA (1975 PA 228; MCL 208.1 to MCL 208.145) was repealed by 2006 PA 325, effective December 31, 2007. Effective January 1, 2008, 2007 PA 36 replaced the SBTA with the now former BTA.

scribed in § 401 of the BTA, MCL 208.1401, (2) the "brownfield rehabilitation credit" referred to in § 437 of the BTA, MCL 208.1437, (3) the "compensation credit" set forth in § 403(2) of the BTA, MCL 208.1403(2), and (4) the "investment tax credit" provided for by § 403(3) of the BTA, MCL 208.1403(3). Two of these credits—the unused carryforward credit and the brownfield rehabilitation credit—were available under the SBTA, and they were carried forward into the BTA. The other credits—the compensation credit and the investment tax credit—were created by the BTA. MCL 208.1403(1) instructed a taxpayer to apply credits in a particular sequence: "Notwithstanding any other provision in this act, the credits provided in this section [i.e., the compensation credits and the investment tax credits] shall be taken *before any other credit under this act*." (Emphasis added.)

Although the language of MCL 208.1403(1) indicates that compensation credits and investment tax credits must be taken "before any other credit under this act," the Department crafted a form that required taxpayers to take carryforward credits and brownfield rehabilitation credits before taking compensation credits and investment credits. In this case, however, when Ashley Capital filed its returns, it did not comply with the sequence indicated by the form. Instead, Ashley Capital claimed its compensation credits and investment tax credits first. The Department then issued Ashley Capital a notice that its refund for the 2008 tax year had been adjusted. The adjustment reduced Ashley Capital's requested refund. Ashley Capital challenged the adjustment, and an informal conference was held with the Department's hearing referee. The hearing referee issued a recommendation that Ashley Capital receive a refund, but the Department over-

ruled the hearing referee and denied Ashley Capital's request for a refund.

Adding claims for the 2009 and 2011 tax years, Ashley Capital appealed the decision in the Court of Claims, and the court reversed the Department's decision. The Court of Claims concluded that MCL 208.1403(1) evinced a legislative intent to "create a 'super' priority for Compensation Credits and Investment Tax Credits." Thus, the Court of Claims reasoned that compensation credits and investment tax credits must be taken first, before *all* credits—those credits that originated under the BTA as well as those credits that were created by the SBTA and carried forward by the BTA. Because Ashley Capital followed the sequence indicated in the statute, the Court of Claims determined that Ashley Capital was entitled to summary disposition under MCR 2.116(I)(2). The Department appealed as of right in this Court.

The issue before this Court is one of statutory interpretation. That is, both parties contest the interpretation of MCL 208.1403(1) and the sequence in which credits under this provision must be claimed. The parties both recognize that compensation credits and investment tax credits must be taken before all other credits under the BTA, but they disagree about what constitutes a "credit under [the BTA]." Specifically, the Department argues that "any other credit under th[e BTA]" means only those credits *created* by the BTA, which would mean that brownfield rehabilitation credits and carryforward credits that originated under the SBTA are not included. In contrast, Ashley Capital argues that brownfield rehabilitation credits and carryforward credits are credits that carried over to the BTA from the SBTA, and thus, under the plain language of MCL 208.1403(1), compensation credits

and investment tax credits must be taken before brownfield rehabilitation credits and carryforward credits.

We review de novo a trial court's decision on a motion for summary disposition. *Jimkoski v Shupe*, 282 Mich App 1, 4; 763 NW2d 1 (2008). "A court may grant summary disposition to the opposing party under MCR 2.116(I)(2) if it determines that the opposing party, rather than the moving party, is entitled to judgment." *Jaguar Trading Ltd Partnership v Presler*, 289 Mich App 319, 322; 808 NW2d 495 (2010). We review de novo an issue of statutory construction, which is a question of law. *Lear Corp v Dep't of Treasury*, 299 Mich App 533, 537; 831 NW2d 255 (2013).

"When interpreting statutory language, our obligation is to ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute." *Koontz v Ameritech Servs, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002). To this end, we "must give effect to every word, phrase, and clause in a statute, and must avoid an interpretation that would render any part of the statute surplusage or nugatory." *Id.* Statutory language must be considered in context, and undefined terms must be given their plain and ordinary meaning. *MidAmerican Energy Co v Dep't of Treasury*, 308 Mich App 362, 370; 863 NW2d 387 (2014). "If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written." *Ford Motor Co v Dep't of Treasury*, 496 Mich 382, 389; 852 NW2d 786 (2014) (quotation marks and citation omitted). "[A] provision of the law is ambiguous only if it 'irreconcilably conflict[s]' with another provision, or 'when it is *equally* susceptible to more than a single meaning.'" *In re Application of Indiana Mich Power Co for a Certifi-*

*cate of Necessity*, 498 Mich 881 (2015), quoting *Lansing Mayor v Pub Serv Comm*, 470 Mich 154, 166; 680 NW2d 840 (2004) (citation omitted). "When ambiguities exist, tax laws are generally construed in favor of the taxpayer," *Lear Corp*, 299 Mich App at 537, but "tax statutes that grant tax credits or exemptions are to be narrowly construed in favor of the taxing authority because such statutes reduce the amount of tax imposed," *Alliance Obstetrics & Gynecology, PLC v Dep't of Treasury*, 285 Mich App 284, 286; 776 NW2d 160 (2009). However, "[w]hile tax-exemption statutes are strictly construed in favor of the government, they are to be interpreted according to ordinary rules of statutory construction." *Inter Coop Council v Dep't of Treasury*, 257 Mich App 219, 223; 668 NW2d 181 (2003). We note as well that an administrative agency's "interpretation is entitled to respectful consideration and, if persuasive, should not be overruled without cogent reasons." *Younkin v Zimmer*, 497 Mich 7, 10; 857 NW2d 244 (2014) (quotation marks and citation omitted).

In this case, the statute at issue is former MCL 208.1403(1), which provided in full:

> Notwithstanding any other provision in this act, *the credits provided in this section shall be taken before any other credit under this act*. Except as otherwise provided in [MCL 208.1403(6)], for the 2008 tax year, the total combined credit allowed under this section shall not exceed 50% of the tax liability imposed under this act before the imposition and levy of the surcharge under section 281. For the 2009 tax year and each tax year after 2009, the total combined credit allowed under this section shall not exceed 52% of the tax liability imposed under this act before the imposition and levy of the surcharge under section 281. [Emphasis added.]

Considering the plain language of the statute, we conclude that the Court of Claims correctly recognized that MCL 208.1403(1) placed compensation credits and investment credits in a " 'super' priority" position relative to all other credits a taxpayer might claim under the BTA. That is, it is unmistakable that the credits described in MCL 208.1403, i.e., compensation credits and investment credits, must have been taken *"before* any other credit under this act." (Emphasis added.) Further, in our judgment it is equally clear that "any other credit under this act" refers to any credit described in a section of the BTA other than MCL 208.1403. The term "this act" obviously denotes the BTA. See MCL 208.1101(1). And, for a credit to be "under" the BTA, it must be "within the group or designation of [the BTA]" or "subject to the authority, control, guidance, or instruction of [the BTA]." See *Merriam-Webster's Collegiate Dictionary* (2014) (defining the word "under"). Given this ordinary understanding of what it means to be "under" the BTA, we agree with the Court of Claims' conclusion that brownfield rehabilitation credits and carryforward credits constituted other credits under the BTA. The BTA expressly provided for carryforward credits under MCL 208.1401 and for brownfield rehabilitation credits under MCL 208.1437. Both MCL 208.1401 and MCL 208.1437 were contained in the BTA and more specifically in the chapter entitled "credits," meaning that, quite simply, these were credits "under" the BTA. As such, it is clear that these credits were also subject to the sequencing provision found in MCL 208.1403(1), because they were included in the phrase "any other credit[s] under [the BTA]." Consequently, Ashley Capital correctly sequenced its credits when it claimed compensation credits and investment credits before brownfield reha-

bilitation credits and carryforward credits. See MCL 208.1403(1).

In contrast to this conclusion, the Department maintains that only a credit created by the BTA qualified as a "credit under this act." However, this interpretation impermissibly reads additional language into the statute, which we will not do. See *Book-Gilbert v Greenleaf*, 302 Mich App 538, 542; 840 NW2d 743 (2013). Had the Legislature intended to place only compensation credits and investment credits before those credits *created by* the BTA, it would have so specified. Instead, it chose the phrase "under this act," which clearly encompassed all credits provided for under the BTA, including brownfield rehabilitation credits and carryforward credits. Indeed, although it is true that these credits originated under the SBTA, the SBTA has been repealed. See *Int'l Business Machines Corp v Dep't of Treasury*, 496 Mich 642, 646, 649 n 21; 852 NW2d 865 (2014) (opinion by VIVIANO, J.), citing 2006 PA 325. Consequently, while the credits in question might have originated under the SBTA, as of January 1, 2008, the SBTA no longer existed, and these credits were then governed solely by the BTA. In these circumstances, those credits existed "under" the BTA, and they were covered by the sequencing provision of MCL 208.1403(1).

In a different formulation of essentially the same argument, the Department also argues that the Legislature intended a textual distinction between a "carryforward" from the SBTA and a "credit" under the BTA; that is, those credits carried forward from the SBTA cannot be considered "credits" for purposes of the BTA.[3] This argument from the Department draws a distinc-

---

[3] For example, regarding carryforward credits, MCL 208.1401 stated that "[e]xcept as otherwise provided under this act, any *unused carryforward for any credit* under former 1975 PA 228 may be applied for the 2008 and 2009 tax years and any unused carryforward after 2009 shall

tion without a difference. Under the BTA, carryforward credits, brownfield rehabilitation credits, investment credits, and compensation credits were all available to offset taxpayer liability under the BTA. The mere fact that some credits were carried forward by the Legislature from the SBTA does not alter the clear fact that such carryforwards are nonetheless credits which, like other credits, may be used under the BTA to offset liability arising under the BTA. Indeed, MCL 208.1403(1) referred broadly to "*any* other credit under this act" (emphasis added), and it made no distinction between those credits carried forward from the SBTA and those originating under the BTA. We decline to read such language into the statute. See *Book-Gilbert*, 302 Mich App at 542. Because brownfield rehabilitation credits and carryforward credits may be used under the BTA to offset liability arising from the BTA, they plainly constituted "credits" under the BTA.

Finally, the Department asserts that its interpretation of MCL 208.1403(1) should prevail because the Department had been delegated the discretionary authority to administer the BTA, which included the authority to prescribe forms for use in effectuating the BTA. In these circumstances, the Department maintains that its interpretation is entitled to respectful consideration and that its forms delineating the sequence of credits should be subjected to a rational-basis review.

It is clear that the Department had authority to administer the tax imposed by the BTA, MCL 208.1513(1), to "prescribe forms for use by taxpayers, [and to] promulgate rules in conformity with [the BTA]." MCL 208.1513(3). Moreover, "[a]gencies have the au-

be extinguished." The Department asserts that, given this phrasing, there was a distinction between a "credit" and an "unused carryforward for any credit."

thority to interpret the statutes they are bound to administer and enforce." *By Lo Oil Co v Dep't of Treasury*, 267 Mich App 19, 46; 703 NW2d 822 (2005). However, the Administrative Procedures Act (APA), MCL 24.201 *et seq.*, provides that an administrative agency's "form with instructions, an interpretive statement, a guideline, an informational pamphlet . . . [is not a promulgated rule and] does not have the force and effect of law but is merely explanatory." MCL 24.207(h). Further, although the Department had authority to prescribe forms under the BTA, it did not have the discretion to change the sequence of credits. Forms under the BTA were not subject to rational-basis review because the Legislature expressly established the order of credits in the BTA and did not grant such discretion to the Department. See MCL 208.1403(1). Cf. *Guardian Indus Corp v Dep't of Treasury*, 198 Mich App 363, 381-382; 499 NW2d 349 (1993) (holding that when the statute granted discretion to the commissioner of revenue to require a taxpayer to consolidate tax returns, rational-basis review of decision to not apply decision retroactively was appropriate). Ultimately, while the Department's interpretation of the BTA is entitled to respectful consideration, it is simply not persuasive because it does not comport with the plain language of the statute. See *Younkin*, 497 Mich at 10; *Kmart Mich Prop Servs, LLC v Dep't of Treasury*, 283 Mich App 647, 651; 770 NW2d 915 (2009). Because there are cogent reasons why the Department's interpretation should not be upheld, the Court of Claims properly applied the plain language of the statute and granted summary disposition to Ashley Capital.

Affirmed.

GADOLA, P.J., and HOEKSTRA and M. J. KELLY, JJ., concurred.